## Texas & Pacific Railway Company v. C. P. Webb.

Decided February 28, 1903.

**1.—Railroads—Fellow Servants—"Car" Defined.**

A push car used by a railroad in carrying rock down an inclined plane to a crusher to be there made into ballast for the track, is a car within the fellow servants statute making corporations, etc., engaged in operating a railroad liable for damages sustained by any servant, while engaged in operating their cars, locomotives or trains, although the injury may result from the negligence of a fellow servant. Rev. Stats., art. 4650f.

**2.—Same—Operating Car.**

Within the meaning of that statute plaintiff was "operating" the push car where his employment was for the purpose of loading the car with rock, then mounting it and regulating its speed with brakes down to the crusher, unloading it there and returning with it again, although he was hurt in loading the car while it was standing still.

Appeal from the District Court of Eastland. Tried below before Hon. N. R. Lindsey.

*J. M. Wagstaff,* for appellant.

*Ben M. Terrell,* for appellee.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment of $2000 in appellee's favor for personal injuries. The following facts are substantially alleged and proved by the uncontradicted testimony: Appellee was injured by the act of a fellow servant by the name of Greathouse while in appellant's service, under the following circumstances: Appellant was operating a rock quarry at which laborers were at work quarrying and breaking rock in convenient sizes preparatory to loading the broken pieces upon a push car eight or ten feet long and three or four feet high upon which, when loaded, the rock was transported down an inclined switch track of the usual kind to a rock crusher used to crush rock with which to ballast appellant's main line. Appellee and Greathouse had nothing to do with quarrying and breaking the rock. It was their duty from opposite sides of the car to pick up the quarried and broken rock and load the same upon the push car, which had a loading capacity of about 2800 pounds, after which appellee and Greathouse were required in the performance of their duty to start and mount the car and so use the brakes with which it was provided as to restrain the downward momentum within safe limits, and upon arrival at the crusher to unload and push the car back up the incline to the loading place, where they would proceed as before. Appellee was injured while loading by the negligent act of Greathouse in casting upon the car and over onto appellee's foot a sharp pointed rock. It was alleged that such act was negligent, and inasmuch as no complaint is made of the manner in which this issue of negligence was submitted to the jury, or of the amount of the verdict, we need not notice such features of the case further. Appellee alleged

that Greathouse was an incompetent workman of a low order of intelligence, of which appellee was without knowledge, but of which appellant had notice, or by the exercise of reasonable prudence might have known, and that appellant was guilty of negligence in respect to his employment, and also alleged that appellee and Greathouse at the time of the injury were engaged in the work of operating the car within the meaning of Revised Statutes, article 4560f. Both of these grounds of recovery were submitted to the jury, which returned a general verdict for appellee.

Beginning with the assignments of error in reverse order, we have first to determine whether the push car as above described is a "car" within the meaning of the above article of the statute, and if so, whether within its purview appellee at the time of his injury was engaged in "operating" it.

In reaching the conclusion that it was a car we have had no difficulty. Says Mr. Elliott, in his work on Railroads (vol. 3, sec. 1354): "The term 'cars' when employed in an employer's liability act may be taken to mean any kind of a vehicle other than a locomotive or tender, used by a railroad company for the transportation of passengers, employes or property upon and along its tracks. The term is not confined to coaches, nor to freight cars, but to embrace all kinds of cars. A hand car is 'a car' within the meaning of the statute." This statement, which we approve, is supported by Perez v. San Antonio & A. P. Railway Co., 28 Texas Civ. App., 255, 67 S. W. Rep., 137, by our Court of Civil Appeals for the Fourth District; Benson v. Railway Co. (Minn.), 77 N. W. Rep., 798, and Railway Co. v. Crocker, 95 Ala., 412, 11 So. Rep., 262. Our statute, which we hereinafter quote, is not limited to cars of any particular description or capacity, or to those used in any particular kind of transportation, or moved by any particular kind of force. The push car under consideration was used solely in the transportation of freight or material for use by appellant, and is designated by all the witnesses as a car. We hence overrule appellant's contention in this particular.

But was appellee at the time of his injury engaged in the work of operating said push car? This is the difficult question in the case. For if this question be answered in the affirmative, then appellee is perforce of the statute entitled to recover, regardless of the fact that he was injured by the negligence of a fellow servant for which the master is generally not liable, and irrespective also of the issue of appellant's negligence (if any) in the employment of Greathouse. If otherwise, then the court was in error, as assigned, in submitting the issue of whether appellee was operating a car as alleged.

The statute involved is as follows: "Every person, receiver, or corporation operating a railroad or street railway the line of which shall be situated in whole or in part in this State, shall be liable for all damages sustained by any servant or employe thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver or corporation, by reason of the negligence of any other servant or employe of such person, receiver or corporation, and the fact that such servants or

employes were fellow servants with each other shall not impair or destroy such liability." Rev. Stats., art. 4560f.

We have been unable to find any authority applicable to the precise facts now before us. In the case of Long v. Chicago, R. I & T. Railway Co., 94 Texas, 53, 57 S. W. Rep., 803, a different article of the statute was construed, and an examination of the record in that case tends to show affirmatively that the Supreme Court was not called upon to decide whether in that case Long was at the time of his injury engaged in the work of operating the hand car that injured him while he was carrying tools to the section house. The trial court found as a fact that he was not, and this finding was adopted by us as supported by the evidence. In Lawrence v. Texas Central Railway Co., 25 Texas Civ. App., 293, 61 S. W. Rep., 342, we decided that one whose employment was that of a section hand, while engaged in unloading cross ties from a standing freight car on a side track, was not operating such car within the meaning of the above article. But there the movement or operation of the freight car was in no sense necessary or incidental to the section hand's duty, or the work in which he was engaged. The contrary is true in the case now before us. The switch track and car were constructed with the very object in view which found its fulfillment in the several acts above detailed constituting the duties of appellee and his coservant Greathouse. The constantly recurring duty of loading the car had direct and necessary connection with running it to and from the rock crusher, and both constituted integral parts of appellee's employment. Appellant's contention is to the effect that the car was being operated only when in motion. But it seems to us that this view is too restrictive. The term operation, as used in the statute under consideration, evidently comprehends something more than the mere running of cars, locomotives and trains of a railway company. In the statute itself the same term is used to designate those persons who shall be liable for injuries inflicted through negligence and those who may be so injured and in whose interest and for whose benefit the statute was enacted. The duties of the two classes thus designated are entirely dissimilar, and it hence seems to follow that the term under consideration was used and should be construed as generic in sense. We find the following among other definitions in the Office Standard Dictionary: "Operate. * * * 2. To effect any result; exert agency; act. 3. To bring about a specified result. 4. To produce the proper or intended effect." "Operation. The act or process of operating. 2. A mode of action. 3. A single specific act or transaction. 4. A course or series of acts to effect a certain purpose."

The Supreme Court of Iowa in the case of Deppe v. Chicago, R. I. & P. Railway Co., 36 Iowa, 52, in construing their statute that, "every railroad company shall be liable for all damages sustained by any person, including employes of the company, in consequence of any neglect of the agents, or by any mismanagement of the engineer or other employe of the corporation to any person sustaining such damage," held that while the statute should be limited to employes engaged in the hazardous busi-

ness of operating the road, it would nevertheless include an employe engaged in connection with a dirt train and who was injured while loading a car by the falling of an impending bank. Error was assigned in that case to the action of the trial court in refusing to instruct the jury that the plaintiff, "in view of his employment (shoveling dirt at a bank) at the time of his injury, was not within the purpose and meaning of the act, and hence they should find for defendant." In disposing of the question the Supreme Court say: " * * * The court ruled correctly in refusing the instruction asked, and this because the employment of the plaintiff was connected with the operation of a railway train. It is true he was not injured while or by operating a train, but neither the act itself nor the constitutional limitation requires us to put this very narrow construction upon it. The plaintiff was employed for the discharge of a duty which exposed him to the perils and hazards of the business of railroads; and although the injuries did not arise from such hazards, they can not be separated from the employment. If the plaintiff had been employed exclusively for shoveling or loading the dirt, he could not recover, although he might have rode to and from his work on the cars. The ground we rest our affirmance upon is, that where the employment is entire and a part of the continuous services relates to the perilous business of railroading, it brings the case within the statute and its constitutional limit." In a much later case, the case of Akeson v. Chicago, B. & Q. Railway Co., 75 N. W. Rep., 676, the same court referred to the ᴊeppe case with approval, and construing section 2071 of the Iowa code, to the effect that "every corporation operating a railway shall be liable for damages sustained by employes in consequence of mismanagement of other employes in any manner connected with the use and operation of any railway on or about which they shall be employed," held that an employe engaged in loading coal upon the tender of a standing engine was within their statute. The Iowa statutes seem broader than ours, and the above cases may therefore be not very closely in point, but as will be seen by a review of the Iowa decisions in Akeson v. Railway Co., supra, and in Railway Co. v. Artery, 137 U. S., 507, their statutes are held, as we construe the decisions, to apply to those only who are in some manner engaged in labor connected with the use and operation of a railway, and the cases are hence cited, in want of authority more directly applicable, as tending to show the construction given by the Iowa court to the terms "use and operation" of a railway, and the general view that it seems to us should obtain in the construction of such statutes.

Our statute is remedial, and we think should be liberally construed in accord with section 3 of the Final Title of the Revised Statutes, providing: "That the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes, but the said statutes shall constitute the law of this State respecting the subjects to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice." Article 4560f ought not, as it seems to us, to be so con-

strued as to exclude from its benefits engineers, firemen, brakemen, conductors or others who at the time of an injury resulting from negligence are engaged in some work necessarily and directly connected with the movement and operation of a car, locomotive or train, merely because such car, locomotive or train was not in motion or operation in a restricted sense at the time. Appellee when injured was engaged in one of the parts, one of the series of acts, proximately connected with and necessary to constitute the unit of his employment and the fulfillment of the very purpose of the master in the construction of the track and car of their use. He was at work within the zone of the dangers intended to be provided against, and, as we conclude, within the spirit and beneficial operation of the legislative act under consideration. This being true, and the facts so showing being undisputed, render errors, if any, in the submission of the issue and that relate to the issue of negligence in the employment of Greathouse, entirely immaterial. All assignments of error are therefore overruled and the judgment affirmed.

*Affirmed.*